Andrew M. Moskowitz 041721997
JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.
505 Morris Avenue
Springfield, NJ 07081
(973) 379-4200
Attorneys for Plaintiff Mark Walsh

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARK WALSH,**<br><br>Plaintiff,<br><br>v.<br><br>**BRI-JIL ENTERPRISES INC. and RUSSELL CHIANDUSSE,**<br><br>**Defendants.** | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Mark Walsh ("Plaintiff"), by way of Complaint against Defendants Bri-Jil Enterprises Inc. ("Bri-Jil") and Russell Chiandusse ("Chiandusse"), says the following:

### PARTIES

1. Plaintiff is an individual residing in Mahwah, New Jersey.

2. Upon information and belief, Bri-Jil is a corporation organized pursuant to the laws of the State of New Jersey with an address at 15 Laurel Court, Mahwah, NJ 07430. Bri-Jil operates an IHOP restaurant at 475 New Jersey 17, Ramsey, NJ 07446.

3. Upon information and belief, Chiandusse is the sole and/or a majority shareholder of Bri-Jil.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b). Supplemental jurisdiction is asserted over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Because defendants reside in this judicial district, venue is proper pursuant to 28 U.S.C. § 1391(b). Alternatively, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

6. From April 2011 until October 24, 2014 ("the Relevant Time Period"), Plaintiff was employed by Bri-Jil as a manager.

7. Bri-Jil is a privately-owned for-profit corporation.

8. During the Relevant Time Period, Bri-Jil had annual gross revenues of at least $500,000.00.

9. During the Relevant Time Period, Bri-Jil had two (2) or more employees.

10. During the Relevant Time Period, Bri-Jil had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person.

11. During the Relevant Time Period, Plaintiff was purportedly a salaried employee who was paid $800 per week.

12. Although classified as "salaried", Plaintiff was required to "punch in" when he arrived and "punch out" when he departed.

13. On days when Plaintiff did not work a full day, his paycheck was reduced to reflect whatever period of time that he was absent.

14. On average, Plaintiff worked more than forty (40) hours per week. For many weeks, Plaintiff worked more than fifty (50) or more hours per week.

15. When Plaintiff worked in excess of forty (40) hours per week, he was not paid any additional compensation.

16. During Plaintiff's employment, Chiandusse maintained plaintiff's employment records (including time cards) and had the power to hire and fire Plaintiff; control his work schedule and conditions of employment; and determine his rate of pay and methods of payment.

17. During the course of his employment, Plaintiff objected to a number of his employer's practices that he reasonably believed were against the law or injurious to the public health.

18. With regard to the latter, Plaintiff objected when the restaurant did not have hot water for two (2) days and, as a result, washed its dishes in cold water, a practice that Plaintiff reasonably believed was in violation of the Board of Health regulations.

19. On another occasion, Plaintiff lodged an objection when, for approximately three (3) months, the restaurant had a rotting dead animal near the front door but took no steps to remediate the problem.

20. With regard to defendants' illegal practices, Chiandusse docked employees' wages and/or denied them tips due to actual and/or anticipated missing silverware as well as broken dishes. Plaintiff objected on more than occasion to Chiandusse regarding this practice, voicing his belief that that these practices were not legal.

21. Another illegal practice to which Plaintiff objected was a scheme in which Chiandusse manipulated an employee's hours so the employee could collect unemployment.

Specifically, Chiandusse raised the employee's hourly rate so he could pay this individual the same compensation while falsely reporting that he had worked less than thirty (30) hours a week.

22. In addition, on more than one occasions, Plaintiff objected to manager Charles Grieco's sexual harassment of the restaurant's waitresses and his retaliation against them when they refused his advances. Mr. Grieco's conduct caused at least two waitresses to submit written complaints to Chiandusse.

23. Finally, on numerous occasions, Chiandusse and Plaintiff discussed the fact that, as discussed supra, Bri-Jil had classified him as a salaried employee yet would reduce his pay by $16 per hour if he worked less than forty-nine (49) hours per week. Plaintiff told Chiandusse on more than one occasion that he objected to this practice.

24. Plaintiff further stated to Chiandusse that if he reduced his pay based on the number of hours that he worked then Plaintiff was an hourly employee and defendants were required to pay him overtime.

25. On October 23, 2014, Bri-Jil terminated Plaintiff's employment.

26. In the termination letter by Chiandusse, he cited the following as one of the reasons for plaintiff's termination:

> [r]efusing to work past the minimum required hours, even when I desperately needed your help, and told you I would pay you for any extra time, even though you were a salaried employee and I shouldn't even had to ask. Yet when you do not work your minimum hours, you feel you should be paid for them anyway.

### FIRST CAUSE OF ACTION
(Violation of the Fair Labor Standards Act ("FLSA"),
29 U.S.C. § 201 et seq.)

27. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

4

28. Bri-Jil was Plaintiff's employer within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 (d).

29. Because Plaintiff was paid wages to work for privately-owned for-profit corporation Bri-Jil, he was an employee within the meaning of the FLSA, 29 U.S.C. §§ 203 (e), 203(g).

30. As more fully described in paragraphs 7-10, supra, Bri-Jil is a business enterprise engaged in commerce within the meaning of the FLSA.

31. Plaintiff was paid on an hourly basis and his paycheck was reduced due to partial-day absences.

32. Because plaintiff was not paid on a "salary basis," he did not qualify for the FLSA's exemption and therefore should have received overtime pay equivalent to one and one-half times his regular hourly rate of pay.

33. Bri-Jil's failure to pay plaintiff appropriate overtime compensation was in violation of the FLSA.

34. As evidenced by the fact that he had the power to hire and fire employees, determine salaries; maintain employment records and otherwise exercise operational control over significant aspects of Bri-Jil's day-to-day functions, Chiandusse may be held individually liable.

35. Defendants' violation of the FLSA was willful and knowing and constitutes an intentional violation.

WHEREFORE, Plaintiff Mark Walsh demands that judgment be entered against Defendants Bri-Jil Enterprises Inc. and Russell Chiandusse and that he be awarded unpaid wages; liquidated damages of 100% of the wages due; compensatory and punitive damages; costs and a reasonable attorney's fee; such other relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
### (Retaliatory termination in violation of FLSA, 29 U.S.C. § 215(a)(3))

36. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

37. In complaining to Chiandusse on more than one occasion that Bri-Jil reduced his pay based on the number of hours that he worked yet failed to pay him overtime for hours worked in excess of forty (40), Plaintiff engaged in protected activity.

38. As set forth in paragraph 26, supra, a causal link existed between the Plaintiff's protected activity and Bri-Jil's decision to terminate Plaintiff's employment.

39. As a proximate result of defendants' retaliatory actions against Plaintiff, he has suffered economic and emotional damages and has otherwise been harmed.

WHEREFORE, Plaintiff Mark Walsh demands that judgment be entered against Defendants Bri-Jil Enterprises Inc. and Russell Chiandusse and seeks the following relief: compensatory and punitive damages; costs and a reasonable attorney's fee; such other relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
### (Violation of the New Jersey Conscientious Employee Protections Act ("CEPA"), N.J.S.A. 34:19-1 et seq.)

40. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

41. Under New Jersey law, an employer may not retaliate against an employee because the employee objects to or refuses to participate in activity that he reasonably believes is

incompatible with a clear mandate of public policy concerning the public health, safety or welfare; is in violation of a law, rule or regulation; and/or is fraudulent or criminal. N.J.S.A. 34:19-3(c)(1)-(3).

42. As set forth in paragraphs 17-24, supra, Plaintiff objected to a number of Bri-Jil's practices that reasonably believed were in violation of a law, rule or regulation; fraudulent or criminal; and/or incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

43. In retaliation for said objections, Plaintiff was terminated.

44. As an individual who acted on behalf of or in the interest of Bri-Jil with Bri-Jil's consent and/or as a supervisory employee, Chiandusse may be held individually liable.

45. As a proximate result of defendants' retaliatory actions against Plaintiff, he has suffered economic and emotional damages and has otherwise been harmed.

WHEREFORE, Plaintiff Mark Walsh demands that judgment be entered against Defendants Bri-Jil Enterprises Inc. and Russell Chiandusse and seeks the following relief: (i) compensation for lost wages, lost benefits including health and pension benefits and other remuneration pursuant to N.J.S.A. § 34:19-5(d); (ii) front pay; (iii) additional compensatory damages; (iv) punitive damages pursuant to N.J.S.A. § 34:19-5(f) and the common law; (v) payment by defendants of plaintiff's reasonable costs and attorney's fees pursuant to N.J.S.A. § 34:19-5(e); (vi) pre-judgment interest; and (vii) such other relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### (Wrongful discharge)

46. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

47. The state and federal laws regarding the payment of employee's wages, the New Jersey Unemployment Compensation Law, and the New Jersey Law Against Discrimination demonstrate clear mandates of public policy.

48. Because Plaintiff was terminated in retaliation for his objection to practices that violated these laws, his discharge was wrongful.

49. As a proximate result of the wrongful discharge of Plaintiff, the latter has suffered economic and emotional damages and has otherwise been harmed.

WHEREFORE, Plaintiff Mark Walsh demands that judgment be entered against Defendants Bri-Jil Enterprises Inc. and Russell Chiandusse and seeks the following relief: compensatory damages; punitive damages; reasonable costs and attorney's fees; pre-judgment interest; and such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Mark Walsh demands trial by jury on all claims and issues so triable.

**JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.**
Attorneys for Plaintiff Mark Walsh

By: /s/ Andrew M. Moskowitz
Andrew M. Moskowitz

Dated: February 3, 2015