**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARK WALSH, | Civil Action No.: 15-0872 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| BRIL-JIL ENTERPRISES INC and RUSSELL CHAINDUSSE, | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of cross motions for summary judgment filed by Plaintiff, Mark Walsh, and Defendants, Bril-Jil Enterprises Inc. and Russell Chiandusse (collectively, "Defendants"). (ECF Nos. 20, "Pl.'s Mov. Br."; ECF No. 25. "Defs.' Br."). Plaintiff has opposed Defendants' motion. (ECF No. 33, "Pl.'s Reply Br."). The Court has considered the Parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court grants Plaintiff's motion for partial summary judgment as to Count I of the Complaint, and grants in part and denies in part Defendants' motion for summary judgment as to Counts I through IV of the Complaint.

I.      **Background**[1]

Plaintiff Mark Walsh ("Mr. Walsh" or "Plaintiff") worked as a manager for an IHOP restaurant located in Ramsey, New Jersey, from April 2011 until October 24, 2014.  (ECF No. 20-2, Pl.'s SUMF ¶¶ 1, 2; ECF No. 25-1, Defs.' Opp. SUMF ¶ 1, 2).[2]  Defendant Bri-Jil Enterprises, Inc. ("Bri-Jil") operates the IHOP restaurant at which Plaintiff was employed, and Defendant Russell Chiandusse ("Mr. Chiandusse") is Bri-Jil's sole shareholder.  (SUMF ¶¶ 1, 3).  On March 24, 2014, Plaintiff filed the instant lawsuit, asserting claims against Defendants for violation of and retaliatory termination under the Fair Labor Standards Act ("FLSA" or the "Act") (Counts I and II), violations of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count III), and wrongful termination (Count IV).  (ECF No. 1-1 Complaint, "Compl." at 4-8).

In short, Plaintiff alleges that Defendants violated the FLSA by refusing to compensate him for any overtime hours (that is, any hours worked per week in excess of 40) and by terminating him out of retaliation for complaining about that violation.  (Compl. at 4-6).  In addition to Defendants' failure to pay Plaintiff for overtime work, Plaintiff alleges that Defendants engaged in a number of other unlawful or objectionable practices.  (*Id.* ¶¶ 17-24, 40-45).  According to Plaintiff, Defendants fired him for voicing his objections to these practices.  (*Id.* ¶¶ 42-43).

---

[1] These background facts are taken from the record evidence, and, where possible, the parties' statements of material facts pursuant to Local Civil Rule 56.1.  (ECF No. 20-2, Local 21 et al., Plaintiff's Statement of Uncontested Material Facts ("Pl. SUMF"); ECF No. 25-1, Defendants' Response to Local 21 et al. Statement of Uncontested Material Facts ("Def. Opp. SUMF"); ECF No. 25-2, Local 21 et al. Defendants' Supplemental Statement of Material Facts ("Def. SSMF"); ECF No. 33-2, Plaintiff Response to Defendants' Statement of Uncontested Material Facts ("Pl.'s Opp. SSMF").  The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts."  *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

[2] Hereinafter, to the extent Defendants' reply to Plaintiff's Statement of Undisputed Material Facts admits to any of Plaintiff's statement, the Court will cite only to "SUMF ¶ ___."

Plaintiff now moves for partial summary judgment with respect to Count I of his Complaint. (*See* Pl.'s Mov. Br.). Specifically, Plaintiff moves for summary judgment as to Defendants' liability under the FLSA for failing to compensate him for overtime work. *Id.* Plaintiff also seeks a ruling that Mr. Chiandusse may be held individually liable for the FLSA violation and that Plaintiff is entitled to liquidated damages and attorney's fees under the Act. (*Id.*). Defendants have cross-moved for summary judgment as to each count of Plaintiff's Complaint.

### A. Plaintiff's Compensation

The following facts, relevant to the pending motions, are undisputed. As sole shareholder of Bri-Jil, Mr. Chiandusse was responsible for setting Plaintiff's compensation. (SUMF ¶ 6). Initially, Mr. Walsh was to receive a weekly salary of $750. (*Id.* ¶ 13). However, in October 2011, Plaintiff's salary increased to $800 per week. (*Id.*). Notwithstanding the designation of a weekly salary, Mr. Chiandusse's policy for paying his managers was that "you work 50 or close to it, you got paid for 50. If you work less, you would get docked. If you worked more, you would be paid for it." (*Id.* ¶ 12). Mr. Chiandusse would dock a manager's pay based upon an "hourly rate." (*Id.*). In the case of Mr. Walsh, that rate was $16 per hour. (*Id.*). Mr. Chiandusse acknowledged that "the only reason" Mr. Walsh was sometimes paid less than $800 was that on those occasions, Mr. Walsh worked fewer than 50 hours a week. (SUMF ¶ 15). Despite having a designated weekly salary, Mr. Walsh was required to clock in and out when he arrived at and departed from work. (*Id.* ¶ 11).

The earnings records produced by defendants indicate that on thirty-two occasions, Mr. Walsh was not paid his expected weekly salary. (SUMF ¶ 16). In fact, Mr. Chiandusse has admitted that Plaintiff's salary was docked on a number of occasions because he did not work at least 50 hours per week. (*Id.* ¶¶ 15-24). For example, during the week of October 15th through 22nd, 2012, Mr.

3

Walsh worked 43.97 hours and his gross weekly earnings were $704. (SUMF ¶ 17). Mr. Chiandusse acknowledged that Mr. Walsh was paid less than $800 that week "because he didn't work his hours." (SUMF ¶ 18). Likewise, the earning records for the week of November 12th through November 18th, 2012, reflect that Plaintiff worked 48.2 hours and that his gross weekly earnings were $772. (SUMF ¶ 19). When asked if it would "be fair to say" that Mr. Walsh was paid $722 that week because he worked 48.2 hours, Mr. Chiandusse replied "[c]orrect." (SUMF ¶ 20). Additionally, during the week of November 19th through 25th, 2012, Mr. Walsh worked 40.33 hours and earned $660 for the week. (*Id.* ¶ 21). Mr. Chiandusse explained that Mr. Walsh's salary was reduced because he "only worked four days that week." (*Id.* ¶ 22). In summary, it is undisputed that Plaintiff's weekly salary was docked a number of times because he worked less than the fifty hours that Mr. Chiandusse expected of him.

### B. Allegations of Defendants' Unlawful or Inappropriate Conduct

Aside from Defendants' alleged failure to properly compensate Plaintiff for overtime work, Plaintiff has alleged that Defendants engaged in a number of unlawful or otherwise objectionable practices. Plaintiff pleads that he "objected to a number of his employer's practices that he reasonably believed were against the law or injurious to the public health." (Compl. ¶ 17). Specifically, Plaintiff alleges that:

> . . . [He] objected when the restaurant did not have hot water for two (2) days and, as a result, washed its dishes in cold water, a practice that Plaintiff reasonably believed was in violation of the Board of Health regulations.
>
> On another occasion, Plaintiff lodged an objection when, for approximately three (3) months, the restaurant had a rotting dead animal near the front door but took no steps to remediate the problem.
>
> . . . Chiandusse docked employees' wages and/or denied them tips due to actual and/or anticipated missing silverware as well as broken dishes. Plaintiff objected on more

than [sic] occasion to Chiandusse regarding this practice, voicing his belief that these practices were not legal.

Another illegal practice to which Plaintiff objected was a scheme in which Chiandusse manipulated an employee's hours so the employee could collect unemployment. Specifically, Chiandusse raised the employee's hourly rate so he could pay this individual the same compensation while falsely reporting that he had worked less than thirty (30) hours a week.

In addition, on more than one occasions [sic], Plaintiff objected to manager Charles Grieco's sexual harassment of the restaurant's waitresses and his retaliation against them when they refused his advances. Mr. Grieco's conduct caused at least two waitresses to submit written complaints to Chiandusse.

Finally, on numerous occasions, Chiandusse and Plaintiff discussed the fact that, as discussed supra, Bri-Jil had classified him as a salaried employee yet would reduce his pay by $16 per hour if he worked less than forty-nine (49) hours per week. Plaintiff told Chiandusse on more than one occasion that he objected to his practice.

(*Id.* ¶¶ 17-24).

The Parties dispute the veracity of these allegations. Most significantly for the purposes of the pending motions, the Parties dispute whether Plaintiff made any complaints to Defendants with respect to the above incidents. (*Compare* ECF No. 25-2, "Defs.' Supp. SUMF" ¶¶ 18-19 *with* (ECF No. 33-2, "Pl.'s Responsive SUMF" ¶ 18-19). Defendants state that they do not recall receiving any written or oral complaints from Plaintiff with respect to any of these incidents. (*Id.* ¶¶17-18). In response, Plaintiff cites to Mr. Chiandusse's testimony that Mr. Walsh "may have said stuff" about Mr. Grieco's workplace behavior. (Pl.'s Responsive SUMF ¶ 18). Plaintiff also cites to Mr. Chiandusse's testimony that Plaintiff "might have mentioned" to him that Mr. Grieco was watching pornography when he was working. (*Id.*). Additionally, as to the allegations of the rotting animal, Plaintiff testified that he told his employer that "there is odor here, and that we should [do] something about it." (*Id.* ¶ 19).

## C. Plaintiff's Termination

5

Mr. Chiandusse testified that "before we got to the last maybe three months that [Mr. Walsh] worked, I never really had any issues with [Mr. Walsh]" and that "[h]e was a good employee [e]ven though he came in late." (Defs.' Supp. SUMF ¶ 22, de Stefano Cert., Exh. A, Chiandusse Dep. Tr. at 63:18-22). However, on August 25, 2014, after receiving a written complaint from Plaintiff's co-manager, Mr. Grieco, about Plaintiff's inappropriate behavior towards Mr. Greico, Defendants issued Plaintiff an Employee Warning. (*Id.* ¶¶ 20-21, de Stefano Cert., Exh. H).

Thereafter, by letter dated October 23, 2014, Mr. Chiandusse terminated Plaintiff's employment. (*Id.* ¶ 23). The termination letter sets forth a number of grounds for Plaintiff's termination, including Plaintiff's alleged refusal to do some of the tasks assigned to him, his poor attitude, and inappropriate outbursts. (*Id.*, de Stefano Cert., Exh. I). Of particular import to the pending motions, below are additional grounds for Plaintiff's termination, as provided in the termination letter:

- On 8/25/14 you were given a warning notice (copy attached) for unacceptable workplace behavior. Now, 2 months later, you have continued to badger and harass your fellow manager, completely ignoring the written warning you received.

- Refusing to work past the minimum required hours, even when I desperately needed your help, and told you I would pay you for any extra time, even though you were a salaried employee and I shouldn't have even had to ask. Yet when you do not work your minimum hours, you feel you should be paid for them anyway.

- Carrying out your management responsibilities had deteriorated of late, and you were not showing any discipline of staff, thereby causing a breakdown of the operation. You had become a close friend to most employees, thereby relinquishing your management responsibilities, and were not able to maintain a properly functioning restaurant.

Against this backdrop, Plaintiff alleges that Defendants violated his right to overtime payment pursuant to the FLSA and terminated Plaintiff in retaliation for asserting his right to overtime payment and out of retaliation for his objecting to Defendants' otherwise inappropriate practices.

The Court has reviewed all papers filed in support of and in opposition to the pending motions, and these motions are now ripe for the Court's adjudication.

## II.   Legal Standard

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir.1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995).

## III.   Discussion

### A.   Count I: Violation of the Fair Labor Standards Act

The Parties have cross-moved for summary judgment with respect to Count I of Plaintiff's Complaint-namely, Plaintiffs' allegations that Defendants denied him overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*

i.   **Whether Plaintiff is Exempted from the FLSA's Overtime Compensation Provisions**

Employers under the purview of the FLSA are required to provide overtime compensation to employees who work in excess of a forty-hour workweek. 29 U.S.C. § 207(a)(1). However, this requirement does not apply to, *inter alia*, "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

Here, the Parties dispute whether Plaintiff was an "executive" employee who was therefore not entitled to overtime compensation. (Defs.' Br. at 11-12; Pls.' Reply Br. at 7-9). The Federal Regulations define an "employee employed in a bona fide executive capacity" as an individual who is:

> (1) *Compensated on a salary basis* at a rate of not less than $455 per week . . . .;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis added).

Defendants argue that Plaintiff meets the above definition because he was a manager who, among other responsibilities, "had significant input in the day-to-day operations and made suggestions to Defendant regarding the hiring, firing, advancement, promotion, or any other change of status regarding employees." (Defs.' Br. at 12). Defendants further explain that Plaintiff was the beneficiary of vacation and sick time, and that he received "bonus compensation for any hours worked over his required fifty hour work week." (*Id.*). Defendants cites to 29 U.S.C. § 541.604(a) for the proposition that they did not lose Plaintiff's exempt status by providing him with these benefits. (*Id.*).

8

Notwithstanding these arguments, Defendants have failed to address the elephant in the room with respect to Plaintiff's status as "exempt." That is, Defendants have not argued that Plaintiff was compensated on a *salary*, as opposed to an hourly basis as required by the first prong, above. Yet, in order to qualify as "exempt" under the overtime provision, an employee must be paid on a salary, as opposed to an hourly basis. *Auer v. Robbins*, 519 U.S. 452, 456 (1997). Federal regulations provide:

> An employee will be considered to be paid on a 'salary basis' within the meaning of [the FLSA] if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, *which amount is not subject to reduction because of variations in the quality or quantity of the work performed.* Subject to the exceptions provided in paragraph (b) of this Section, *an employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.* . . .

29 C.F.R. § 541.602(a) (emphasis added).

The regulations further provide that "[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." *Id.*

Here, as of October 2011, Plaintiff was to receive a weekly salary of $800. (SUMF ¶ 13). However, as discussed above, Defendants have admitted that they made deductions to Plaintiff's pay based upon the amount of hours he worked. (Defs.' SMF ¶ 12). Defendant Chiandusse testified that his policy for paying managers such as Plaintiff was as follows:

> A:    . . . Basically, if you work 50 or close to it, you got paid for 50. If you work less, you would get docked. If you work more, you would be paid for it.
>
> Q:    And how did you determine what the amount to dock was?
>
> A:    It was an hourly rate. This case it [sic] $16 an hour.
>
> Q:    So for each hour they worked under 49, they would get docked $16?

A:      Basically, yeah. It didn't typically happen. . . .

(Moskowitz Cert., Exh. C, Chiandusse Dep. 24:3-15). Mr. Chiandusse also testified that the "only

reason" Plaintiff would have been paid less was because he worked less than 50 hours. (*Id.* at

29:16-25). Finally, as discussed in detail in Section I.A., *supra*, Defendants have admitted that a

number of time records they produced reflect that Plaintiff's gross weekly earnings were docked

to account for any hours that he worked under fifty. (SUMF ¶¶ 17-20).

Given these facts, it is undisputed that Defendants docked Plaintiff's weekly pay based

upon the number of hours he worked during any given week. Such deductions are improper under

the FLSA's governing regulations. *See* 29 C.F.R. § 541.602. Because Defendants had a practice

of docking Plaintiff's pay, the Court finds that Plaintiff was not a salaried employee; rather, Mr.

Walsh was an hourly employee who is entitled to the benefit of FLSA overtime compensation.

*See* 29 C.F.R. §541.603(a); 29 U.S.C. §207(a). For these reasons, Plaintiff's motion for partial

summary judgment with respect to Count I of the Complaint is granted.

### ii.      Mr. Chiandusse's Individual Liability

In addition to a ruling on Defendants' liability, Plaintiff seeks a ruling from this Court that

Mr. Chiandusse may be held individually liable for the FLSA violation as an "employer" under

the FLSA. (Pl.'s Mov. Br. at 9-10). As defined by the FLSA, "'[e]mployer' includes any person

acting directly or indirectly in the interest of an employer in relation to an employee and includes

a public agency . . . ." 29 U.S.C. § 203(d). In determining whether an individual can be held liable

under the FLSA, courts consider the degree of authority that the supervisor exercised over the

plaintiff-employee. *See Haybarger v. Lawrence County Adult Probation & Parole*, 667 F.3d 408,

417 (3d Cir. 2012). "[A]n individual supervisor has adequate authority over the complaining

10

employee when the supervisor 'independently exercise[s] control over the work situation.'" *Id.*
(quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984)).

Here, Plaintiff maintains that "Mr. Chiandusse exercised control over every aspect of Mr.
Walsh's employment." (Pl.'s Mov. Br. at 10). For example, Mr. Chiandusse had the power to
hire and fire Plaintiff, set Plaintiff's compensation and work schedule, and maintained Plaintiff's
employment records. (*Id.*). For these reasons, and given that Defendants have not disputed Mr.
Chiandusse's status as an employer under the Act, the Court finds that Mr. Chiandusse may be
held individually liable under the FLSA.

### iii.    Liquidated Damages

The Parties dispute whether Plaintiff is entitled to an award of liquidated damages for
Defendants' FLSA violation. (Pl.'s Mov. Br. at 10-12; Defs.' Br. at 13-14). The FLSA provides
that employers violating the overtime payment provision of 29 U.S.C. § 207 are liable for
liquidated damages equal to the amount of compensatory damages. 29 U.S.C. § 216(b). "The
liquidated damages provision amounts to a Congressional recognition that failure to pay the
statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum
standard of living 'necessary for health, efficiency and general well-being of workers' that double
payment must be made to compensate employees for losses they might suffer by not receiving
their lawful pay when it was due." *Brooks v. Village of Ridgefield Park,* 185 F.3d 130, 137 (3d
Cir. 1999) (footnote omitted).

The award of liquidated damages, however, is not automatic:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise
> to such action was in good faith and that he had reasonable grounds for believing that his
> act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended,

the court may, in its sound discretion, award no liquidated damages or award any amount thereof subject to the applicable statutory limit on liquidated damages.

29 U.S.C. § 260. As the statute makes clear, a defendant opposing the award of liquidated damages bears the burden of demonstrating that it acted in subjective good faith on objectively reasonable grounds. *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907–08 (3d Cir.1991). As the Third Circuit explained:

> The *Good faith requirement is a subjective one* that "requires that the employer have an honest intention to ascertain and to follow the dictates of the Act." . . . The *reasonableness requirement imposes an objective standard* by which to judge the employer's conduct. . . . Ignorance alone will not exonerate the employer under the objective reasonableness test. . . .
>
> If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

*Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 129 (3d Cir. 1984) (citations omitted). To that end, "the employee need not establish an intentional violation of the Act to recover liquidated damages. Instead, the employer must *affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements.*" *Id.* at 129; *see also Martin,* 940 F.2d at 907-908. A district court must make findings prior to exercising its discretion on liquidated damages. *Martin,* 940 F.2d at 907.

In response to Plaintiff's request for liquidated damages, Defendants state that "Plaintiff has the burden to prove willfulness to violate the [FLSA] and summary judgment is inappropriate at this stage in the litigation to make such a determination." (Defs.' Br. at 13). Defendants misstate the standard. As discussed above, it is Defendants, rather than Plaintiff, who bear the burden of showing that they took affirmative steps to ascertain the Act's requirements and comply with same in order to avoid paying liquidated damages.

Defendants have not met this burden.  Defendants argue that Plaintiff is not entitled to liquidated damages because:

> . . . Defendant still paid Plaintiff for any vacation or bonus time that he was entitled to during his employment with Defendant.  The fact that Plaintiff was earning this additional compensation shows Defendant's conduct cannot be considered willful.
>
> Furthermore, as discussed, supra, Defendant's position is that Plaintiff was a manager not entitled to overtime pay based on being an exempt employee.  Also, Plaintiff had   received a warning for lack of professional conduct in August 2014.  On October 23, 2014        Plaintiff was given a termination letter which set forth the reasons for his termination.    Defendant has documented proof that Plaintiff's termination was based on his unsatisfactory work performance.  Based on Plaintiff being an exempt employee as well as being      terminated for unsatisfactory work performance should result in Defendant not being able     to have 'willfully' violated the FLSA.

(*Id.* at 13-14).

To the extent Defendants are arguing that they generally treated Plaintiff appropriately and that they terminated him for good cause, these arguments miss the mark.  The pertinent issue is whether Defendants took any affirmative steps to ascertain the FLSA's requirements, and Defendants have failed to make any showing of such good faith.  In fact, and as Plaintiff points out, Mr. Chiandusse testified that aside from an issue with an unemployment claim which occurred "years and years ago," Mr. Chiandusse has not consulted with an attorney with respect to any employment issues.  (Pl.'s Mov. Br. at 11; *see also* SUMF ¶ 25).  In short, Defendants have not met their burden of proving that they acted in good faith and upon reasonable grounds in denying Plaintiff overtime pay.

For these reasons, the Court declines to exercise its discretion to deny Plaintiff's request for liquidated damages.  Accordingly, Defendants shall be liable to Plaintiff for liquidated damages in the same amount as Plaintiff's unpaid overtime compensation.  *See* 29 U.S.C. § 216(b).

iv.   **Attorney's Fees**

Lastly, Plaintiff requests permission to file an application for attorney's fees and costs pursuant to 29 U.S.C. § 216(b). With respect to attorneys' fees, the FLSA provides "[t]he court ... *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). The language of the statute makes clear that once a plaintiff has prevailed as to damages, attorney's fees and costs are mandatory remedies. Accordingly, the Court will grant Plaintiff's request to file an application for attorney's fees and costs in this action.

In summary, for the reasons discussed above, the Court grants Plaintiff's motion for partial summary judgment, in full, with respect to Count I of Plaintiff's Complaint.

## B.       Count II: Retaliatory Termination in Violation of the FLSA

In Count II of his Complaint, Plaintiff brings a claim against Defendants for retaliatory termination in violation of the FLSA, 29 U.S.C. §215(a)(3). That Section prohibits any employer subject to the FLSA "to discharge . . . any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on any industry committee." 29 U.S.C. §215(a)(3). Thus, to state a claim for retaliatory discharge under the FLSA, "a plaintiff must demonstrate that: (1) the plaintiff engaged in a protected activity, (2) the employer undertook an adverse employment action against the plaintiff, and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action." *Goldsmid v. Lee Rain, Inc.*, 2014 WL 495717, * 5 (D.N.J. Feb. 6, 2014).

Here, Defendants argue that Plaintiff cannot prove retaliatory discharge under the FLSA as a matter of law because he has not "filed any complaint," as that phrase is contemplated by the Act. (Def.'s Br. at 14). Specifically, Defendants maintain that "Plaintiff never verbally advised

14

Defendant that he intended to file a FLSA retaliation complaint" and that "[b]oth Plaintiff and Defendant have testified that no formal meetings took place between each other where Plaintiff asserted his statutory right under 29 U.S.C. § 215(a)(3)." (*Id.* at 15). In short, Defendants argue that summary judgment is appropriate as to Plaintiff's retaliation claim because he "never provided oral notice that he intended to inforce his statutory rights." (*Id.*).

In *Kasten v. Saint-Gobain Performance Plastics Corp.*, the Supreme Court opined on the formality required of a complaint that is protected by the FLSA's anti-retaliation provision. 536 U.S. 1 (2011). The Court balanced the FLSA's goals of safeguarding employee rights against the related need to establish enforcement measures that are fair to employers. *Id.* at 15. Ultimately, the Court concluded that:

> [T]he statute requires fair notice. Although the dictionary definitions, statutes, regulations, and judicial opinions we considered . . . do not distinguish between writings and oral statements, they do suggest that a 'filing' is a serious occasion, rather than a triviality. As such, the phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns.

*Id.* at 15. In short, the Court held that "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 14.

In light of *Kasten*, the question presented is whether Mr. Walsh has offered sufficient evidence from which a reasonable juror could find that he put his employer on notice that he was attempting to assert his statutory rights. *Id.*; *see also Campbell v. Cnty. Of Monmouth*, No. 11-cv-6210, 2015 WL 3626694, *3 (D.N.J. June 10, 2015). To that end, the Court first considers the context in which Plaintiff offered his complaints.

Here, Plaintiff argues that "[i]t is undisputed that, on more than one occasion, Mr. Walsh objected to Defendants' practice of not paying him overtime and reducing his paycheck when he did not work his 'minimum required hours.'" (Pl.'s Reply Br. at 10). However, in support of this statement, Plaintiff cites only to his deposition testimony that he complained to Mr. Chiandusse after receiving a pay check that reflected compensation less than his $800 weekly salary. (Moskowitz Reply Cert., Exh. A., Pl. Dep. 41:1-17). Plaintiff testified to the following conversation that he had with Mr. Chiandusse:

> A:   And I said, but I'm salaried, so I should – my paycheck should be the same every week.  And he said no, you didn't work, you don't get paid.
>
> Q:   And, again, I imagine when you had this conversation, you said, you know, this isn't right or you complained.
>
> A:   Yes.
>
> Q:   And what was his response?
>
> A:   He said that he was right.

(*Id.*).  Additionally, Mr. Chiandusse testified that Plaintiff "may have made a comment about [his pay being docked] at some point, but I don't recollect anything on any specific date." (Moskowitz Reply Cert., Exh. B, Chiandusse Dep. Tr. 34:6-18).  Notably, Mr. Chiandusse's vague recollection is belied by the termination letter that he prepared which referenced Plaintiff's "when you do not work your minimum hours, you feel you should be paid for them anyway." (De Stefano Cert., Exh. E).  Thus, it appears undisputed that Plaintiff, on at least one occasion, complained that he was not being paid enough.

Although it is apparent that Plaintiff complained that he was not being paid for overtime work, the Court finds that a reasonable juror could not find, based upon the above evidence, that Plaintiff sufficiently put Defendants on notice that he was asserting his rights under the FLSA. That is, Plaintiff has not offered any evidence that he made any specific reference to the FLSA in

his discussions with Mr. Chiandusse, that he threatened to file a lawsuit if he was not properly compensated, or even that he put Defendants on notice that their conduct was illegal, as opposed to merely objectionable.

In this regard, the facts of this case are easily distinguishable from both *Kasten* and the district court cases relied upon by Plaintiff in opposition to Defendants' motion. (*See* Pl.'s Reply Br. at 9-11). For example, in *Kasten*, unlike the case at bar, on remand from the Supreme Court, the district court determined that the plaintiff had "filed a complaint" as contemplated by the FLSA where he advised his employer that he was thinking about filing a lawsuit and complained about his employer's payment regime on at least five occasions. *Kasten v. Saint-Gobain Performance Plastics, Corp.*, 703 F.3d 966, 976 (7th Cir. 2012)[3]; *see also Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-cv-4564, 2011 WL 4594654 at *6-7 (D.N.J. Sept. 30, 2011) (Cavanaugh, J.) (finding that plaintiff sufficiently pleaded the first element of his FLSA retaliation claim to withstand defendants' motion to dismiss where he alleged that he advised his employer that he would take action if not paid for overtime work). Likewise, in *Goldsmid v. Lee Rain, Inc.*, relied upon by Plaintiff, the district court found that the plaintiff had offered sufficient evidence from which a reasonable juror could determine that he "filed a complaint" under the Act where, *inter alia*, the plaintiff presented his supervisor with a copy of a fact sheet from the Federal Department of Labor Wage and Hour Division that explained overtime pay. 2014 WL 495717, *2-5 (D.N.J. Feb. 6, 2014) (Irenas, J).

Unlike the above plaintiffs, Mr. Walsh has not offered any evidence from which a reasonable juror could find that he asserted his statutory rights to overtime compensation. Plaintiff

---

[3] Although the Seventh Circuit reversed the district court's grant of summary judgment in defendant's favor and remanded to the district court for further proceedings, it upheld the district court's finding that Kasten had "filed a complaint" under the FLSA.

has instead offered testimony that on one occasion he told Mr. Chiandusse that he "should be paid the same every week." Because no reasonable juror could construe this statement as Plaintiff having put Defendants on notice that he was attempting to assert his statutory right to overtime compensation, the Court finds that Plaintiff cannot prove the first element of an FLSA retaliation claim—that is, that he "filed a complaint." *See Campbell v. Cnty of Monmouth*, No. 11-cv-6210, 2015 WL 3626694, at *2 (D.N.J. June 10, 2015) (holding that plaintiff "has not identified sufficient evidence in the record to create a genuine dispute of material fact on the issue of protected activity" where "no reasonable juror could find that [his] requests to be paid would reasonably be understood by an employer to be an assertion of FLSA rights").

Accordingly, because Plaintiff cannot prove the first element of his FLSA retaliation claim, Defendants' motion for summary judgment with respect to Count II of Plaintiff's complaint is granted.

### C. Count III: CEPA Violation

In Count III of his Complaint, Plaintiff alleges that Defendants violated the Conscientious Employee Protection Act ("CEPA"). That is, Plaintiff accuses Defendants of terminating him out of retaliation for objections he made to a number of Defendants' practices "that he reasonably believed were against the law or injurious to the public health." (Compl. ¶¶17, 42-44). Plaintiff alleges that he complained of the following activity:

> . . . Plaintiff objected when the restaurant did not have hot water for two (2) days and, as a result, washed its dishes in cold water, a practice that Plaintiff reasonably believed was in violation of the Board of Health regulations.
>
> On another occasion, Plaintiff lodged an objection when, for approximately three (3) months, the restaurant had a rotting dead animal near the front door but took no steps to remediate the problem.
>
> . . . Chiandusse docked employees' wages and/or denied them tips due to actual and/or anticipated missing silverware as well as broken dishes. Plaintiff objected on more

than [sic] occasion to Chiandusse regarding this practice, voicing his believe that these practices were not legal.

Another illegal practice to which Plaintiff objected was a scheme in which Chiandusse manipulated an employee's hours so the employee could collect unemployment. Specifically, Chiandusse raised the employee's hourly rate so he could pay this individual the same compensation while falsely reporting that he had worked less than thirty (30) hours a week.

In addition, on more than one occasion, Plaintiff objected to manager Charles Grieco's sexual harassment of the restaurant's waitresses and his retaliation against them when they refused his advances. Mr. Grieco's conduct caused at least two waitresses to submit written complaints to Chiandusse.

Finally, on numerous occasions, Chiandusse and Plaintiff discussed the fact that, as discussed supra, Bri-Jil had classified him as a salaried employee yet would reduce his pay by $16 per hour if he worked less than forty-nine (49) hours per week. Plaintiff told Chiandusse on more than one occasion that he objected to his practice.

(*Id.* ¶¶ 17-24).

To succeed on his CEPA claim, Plaintiff must establish: (1) he . . . reasonably believed that his . . . employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he . . . performed a "whistle-blowing" activity described in *N.J.S.A.* 34:19-3c; (3) an adverse employment action was taken against him . . .; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003) (citing *Kolb v. Burns*, 320 N.J. Super. 467, 476 (App. Div. 1999)). In determining whether a CEPA plaintiff has offered sufficient evidence to prove his claim, courts apply the *McDonnel Douglas* burden shifting test. *Bocobo v. Radiology Consultants of South Jersey, P.A.*, 477 Fed. App'x 890, 900 (3d Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Defendants move for summary judgment on Count III of Plaintiff's Complaint. (Defs.' Br. at 15-17). Defendants have not argued that Plaintiff cannot meet the first prong of a CEPA violation, and the Court therefore does not address whether Plaintiff "reasonably believed that his

. . . employer's conduct was violating either a law, rule, or regulation." *Dwonzar*, 177 N.J. at 462. Instead, Defendants argue that Plaintiff cannot show that he performed a "whistle-blowing activity" with respect to the alleged inappropriate practices and that Plaintiff cannot prove a causal connection between any adverse employment decision and Plaintiff's reporting of Defendants' practices. (Defs.' Br. at 16).

With respect to the second element of the CEPA claim, Defendants state that "there is no proof that any of these alleged complaints were ever made by Plaintiff to Defendant." (*Id.*). In response, Plaintiff has provided proof that he complained of some, although not all, of Defendants' objectionable practices. (Pls.' Reply Br. at 13). With respect to Plaintiff's complaints that he was not receiving overtime pay, the Court has already determined that Plaintiff has not offered sufficient evidence that he engaged in protected activity as to this issue. As to Plaintiff's allegations that he reported his co-manager's inappropriate conduct, Plaintiff directs the Court to Mr. Chiandusse's deposition testimony that Plaintiff "might have mentioned" to him that Mr. Grieco was looking at pornography in the workplace. (*Id.*; *see also* Moscowitz Reply Cert., Exh. B., Chiandusse Dep. Tr. at 46:10-48:16). Finally, Plaintiff notes that he told Mr. Chiandusse that he believed the practice of charging employees for broken dishes was an illegal practice that Plaintiff refused to comply with. (*Id.*; Moscowitz Reply Cert., Exh. A, Walsh Dep. Tr. at 56:5-21). Accordingly, the Court finds that, at least with respect to the above incidents, Plaintiff has offered sufficient evidence from which a reasonable juror could determine that he performed a whistle-blowing activity under the Act. To the extent Defendants deny that any of the above complaints were ever lodged, the answer to this question will hinge on a jury's credibility determination.

The Parties also dispute whether Plaintiff has offered sufficient evidence from which a jury could find that Defendants' decision to terminate him was motivated by his protected activity. In proving causation sufficient to support his CEPA violation, Mr. Walsh "'need not prove that [retaliation] was the sole or exclusive consideration' in the determination to discharge him; rather, he need only show 'by a preponderance of the evidence that it made a difference' in that decision.'" *Donofry v. Autotote Systems, Inc.*, 350 N.J. Super. 276 (App. Div. 2001) (quoting *Bergen v. Commercial Bank v. Sisler*, 157 N.J. 188, 211 (1999)).

Defendants maintain that "all the alleged CEPA violations happened months or years prior to Plaintiff's termination and as a result, a causal link under CEPA in this case cannot be proven." (Defs.' Br. at 16). Plaintiff, for his part, argues that there is sufficient evidence from which a reasonable jury could determine that he was terminated out of retaliation for reporting his co-manager's sexual harassment of other employees. Specifically, Plaintiff directs the Court to the warning letter dated August 25, 2014 (Pl.'s Reply Br. at 16; *see also* de Stefano Cert., Exh. H) as well as the October 24th termination letter. In the August 25th letter, Mr. Chiandusse warned Plaintiff that he had been engaging in

> unacceptable workplace behavior: you have been verbally warned on several occasions of late not to make a scene in front of staff and guests with your temper tantrums and boisterous complaining. On Aug. 21, 2014, @ approx.. 1:15pm, again you made a scene in the restaurant by belittling a co-manager, in the presence of staff members, and which was also reported to me later that day by a customer.

Then, in the October 24th termination letter, Mr. Chiandusse noted that after receiving this warning letter, "2 months later, you have continued to badger and harass your fellow manager, completely ignoring the written warning you received." Plaintiff explains that "the genesis of these conflicts was Mr. Grieco's viewing of pornography and harassment of the servers" and therefore, "a reasonable juror could conclude that Defendants' claim that Mr. Walsh 'continued to badger and

21

harass your fellow manager,' actually referred to Plaintiff's objection to Mr. Grieco's inappropriate conduct in the workplace, which Mr. Walsh reasonably believed violated the [Law Against Discrimination]." (Pl.'s Reply Br. at 16). Finally, Plaintiff contends that Mr. Chiandusse's statement in the termination letter that Plaintiff "became a close friend to most employees, thereby relinquishing [his] management responsibilities" could be construed by a reasonable juror as a reference to Mr. Walsh's relaying the employees' complaints of workplace harassment to Mr. Chiandusse. (*Id.*).

Given the above information, the Court finds that a jury could reasonably construe the termination letter as referencing a tension between Mr. Grieco and Plaintiff that is premised upon Plaintiff having reported his co-manager's inappropriate conduct. If a jury were to construe the letter in this way, then the jury could reasonably determine that Plaintiff was fired out of retaliation for voicing his concerns over Mr. Grieco's conduct. Accordingly, the Court finds that Plaintiff has offered sufficient evidence from which a reasonable juror could determine that Defendants' decision to terminate him was motivated, at least in part, out of retaliation for Plaintiff's whistle-blowing conduct.

For the above reasons, Defendants' motion for summary judgment with respect to Plaintiff's CEPA claim is denied.

### D. Count V: Wrongful Discharge

In Count V of his Complaint, Plaintiff seeks to bring a common law claim against Defendants for "wrongful discharge," also known as a "*Pierce*" claim. (Compl. ¶¶ 47-49; *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58 (1980). Specifically, Plaintiff accuses Defendants of wrongful discharge on account of their terminating him out of retaliation for his objection to unlawful practices under Federal and State employment laws. (*Id.*).

22

Defendants contend that the must Court grant summary judgment in their favor as to Plaintiff's *Pierce* claim because that claim is waived by Plaintiff having filed a CEPA claim. (Defs.' Br. at 17-19).   Pursuant to CEPA's waiver provision: "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, state law, rule, or regulation or under the common law." N.J.S.A. 34:19-8.  The New Jersey Supreme Court has specifically addressed the effect of CEPA's waiver provision on a plaintiff's wrongful discharge claim, explaining: "[a]lthough the enactment of CEPA did not abolish the *Pierce* common-law cause of action, we are persuaded that the Legislature intended that the N.J.S.A. 34:19-8 waiver prevent an employee from pursuing both statutory and common-law retaliatory discharge causes of action." *Young v. Schering Corp.*, 141 N.J. 16, 27 (1995).

However, "[t]he New Jersey Supreme Court has not yet determined when a plaintiff must elect between CEPA and other causes of action." *Martelack v. Toys R US*, No. 13-cv-7098, 2016 WL 762656, * 5 (D.N.J. Feb. 25, 2016) (Kugler, J.).  Nor is there a consensus among courts within this district as to the point in the proceedings at which a plaintiff must elect between pursuing his CEPA or unlawful termination claim.  *See Safarian v. Am. DG Energy, Inc.*, No. 10-cv-6082, 2016 WL 29262, *3 (D.N.J. Jan. 4, 2016) (Thompson, J.) (discussing "the wide variety of outcomes in the caselaw on this issue" and collecting cases); *see also Dewelt v. Measurement Specialties, Inc.*, No. 02-cv-3431, 2007 WL 542234, *6 (D.N.J. Feb. 16, 2007) (Sheridan, J.) (allowing plaintiff to make an election of remedies after resolution of a motion for summary judgment); *Hornung v. Weyerhaeuser Co., Inc.*, No. 06-2300, 2007 WL 2769646, at *6 (D.N.J. Sept. 21, 2007) (Bumb, J.) (holding that "Plaintiff waived all other CEPA-related claims upon his filing of a claim under CEPA").

Against this unsettled law, the Court notes that Defendants will suffer little if any prejudice if Plaintiff were permitted to choose between his causes of action at a later date, particularly where discovery appears to be closed in this matter.  (See ECF No. 13, setting a fact discovery end date of February 15, 2016).  Therefore, this Court will permit Plaintiff to choose which claim he elects to pursue either at or before the final pretrial conference on this matter.  *See Martelack*, 2016 WL 762656, *5 (permitting same).  Accordingly, Defendants' motion for summary judgment as to Plaintiff's unlawful termination claim is denied.

### IV.    Conclusion

For the reasons stated herein, the Court grants Plaintiff's partial motion for summary judgment as to Count I of the Complaint, grants Defendants' motion for summary judgment with respect to Count II of the Complaint, and denies Defendants' motion for summary judgment with respect to Counts I, III and IV of the Complaint.  An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:        October 24, 2016

JOSE L. LINARES, U.S.D.J.